IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS

GUY WESSON BENJAMIN,

    Plaintiff,

v.                                                                                CASE NO.  3:25CV00033 - JM

LUIS ZAMORA and
LANDSTAR INWAY, INC.,

    Defendants.

## LANDSTAR INWAY, INC.'S MOTION SEEKING ORDER FOR THE PHYSICAL AND MENTAL EXAMINATION OF PLAINTIFF GUY WESSON BENJAMIN, PURSUANT TO FED. R. CIV. P. 35

## AND INCORPORATED MEMORANDUM IN SUPPORT OF SAME

**COMES NOW** Defendant Landstar Inway, Inc. ("Landstar"), by and through its counsel of record, and – for good cause shown – moves the Court to enter an order, pursuant to Fed. R. Civ. P. 35, that Plaintiff Guy Benjamin submit to a physical and mental examination by a suitably licensed or certified examiner. In support if its Motion, Landstar relies on the Incorporated Memorandum below.

### CONSULTATION OF COUNSEL

On October 10, 2025, the undersigned counsel for Landstar and counsel for Plaintiff Guy Benjamin ("Benjamin") conferred about this case on a Zoom conference. One of the topics discussed was having Benjamin undergo independent neuro-psychological testing near his home. (*See* EX1). That discussion was followed by the undersigned counsel's October 10, 2025 email asking that Benjamin's counsel "Please advise your position on those efforts under ARCP (sic) Rule 35." (*See* Id.) Benjamin's counsel did not advise Benjamin's position at that time.

On December 5, 2025, the undersigned counsel sought by electronic mail to again confer, writing Benjamin's counsel as follows:

> Lee:
>
> I am following up on my email below concerning neuro-psychological testing on Mr. Benjamin. As you are aware the depositions of Messrs. Benjamin and Zamora were delayed and now will conclude with Mr. Benjamin's deposition in your Houston office on December 18. The following expert witness deadlines are fast approaching with Plaintiff's expert disclosures on January 23, 2026 and Defendants' expert disclosures on February 22, 2026.
>
> FRCP 35 provides for "Physical and Mental Examination," beginning that "The Court where the action is pending may order a party whose mental or physical condition … is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." We have engaged Board Certified Neuropsychologist Adriana Macias Strutt, Ph.D., ABPP-CN. I have attached her CV along with her Sample Procedure Letter, which sets out her neuropsychological/psychological evaluation procedure. We intend to have Dr. Strutt test Mr. Benjamin in accordance with FRCP 35 and these procedures.
>
> Please advise by Tuesday, December 9, 2025, if Mr. Benjamin will submit to a FRCP 35 Physical and Mental Examination without the need for our filing a motion seeking same.
>
> Thank you.
>
> Lew Wardlaw

(*See* Id). At the time of filing, Benjamin's counsel has still not advised Benjamin's position.

## MEMORANDUM IN SUPPORT

*Procedural Status*

On January 15, 2025, Benjamin filed his Complaint and Demand for Jury Trial against Landstar and Luis Zamora (collectively "Defendants") in the Circuit Court of Crittenden County, Arkansas as Case No. 18CV-25-57. Defendants timely caused the case to be removed to this United States District Court for the Eastern District of Arkansas on February 18, 2025 (DE1); and filed their Joint Answer the same day (DE3).

On May 30, 2025, the Court entered its Final Scheduling Order (DE11), which set this matter for "JURY trial before United States District Judge James M. Moody Jr. commencing at 9:15 a.m. sometime during the week of June 22, 2026, in the E. C. 'Took' Gathings Federal Building, Courtroom #324, 615 S. Main, Jonesboro, Arkansas 72401."  Among other deadlines, the Final Scheduling Order also set out the following expert witness deadlines:

- Case-in-chief expert disclosures, including reports, must be made by January 23, 2026.
- Rebuttal expert disclosures, including reports, must be made by February 22, 2026.

*The Deposition of Plaintiff Guy Benjamin*

Benjamin's deposition was initially set by agreement of counsel on November 7, 2025 in Houston, Texas.  On November 3, 2025, Benjamin's counsel wrote the undersigned as follows:

> Dear Lew:
>
> We need to reschedule Guy Benjamin's deposition that's presently set for this Friday, November 7. Mr. Benjamin had a surgical procedure today and he is not going to be in any condition to give his deposition on Friday. Are you available during the week of December 15 – 19? Also, please advise if you want to reschedule Mr. Zamora's deposition or proceed with it this Thursday.
>
> I apologize for any inconvenience this may cause to your schedule. If December 15-19 doesn't work for you, please let me know what dates you do have available and we will find one that works.
>
> Sincerely,
>
> Lee D. Curry

Benjamin's Houston, Texas deposition has now been rescheduled for December 18, 2025.  Absent consent by Benjamin's counsel to his examination, and given the looming expert witness deadlines, the deposition delay necessitates that this Motion precede the December 18, 2025 Benjamin deposition.

## Law and Argument

### Fed. R. Civ. P. 35

Fed. R. Civ. P. 35(a) provides for "Physical and Mental Examinations," setting forth that:

(a) Order for an Examination.

(1) *In General.* The court where the action is pending may order a party whose mental or physical condition—including blood group—is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody or under its legal control.

(2) *Motion and Notice; Contents of the Order.* The order:

(A) may be made only on motion for good cause and on notice to all parties and the person to be examined; and

(B) must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it.

(*See* FRCP 35(a)).

While a motion on good cause is required, "[t]he details surrounding a court-ordered medical exam are left to the court's sound discretion." *Stacy v. PPC Transportation Co.*, No. 4:11-CV-4018, 2012 WL 12919230, at *1 (W.D. Ark. Oct. 15, 2012). Critically, "[t]he Supreme Court has noted that a plaintiff asserting a physical injury in a negligence action both places that injury in controversy and gives the defendant good cause for an examination." *Id.*, at *1. "Thus, the determination of 'good cause' often merges with the requirements necessary to find that a plaintiff's mental or physical condition is 'in controversy.'" *Id.* "[T]here are situations where the pleadings alone are sufficient to meet these requirements." *Jimerson v. Ford*, No. 4:20-CV-01145 KGB, 2024 WL 4108340, at *2 (E.D. Ark. Sept. 6, 2024).

The Complaint, along with Benjamin's discovery responses, and traumatic brain injury claims, present good cause for the Court to order his Physical and Mental Examination.

4

*Benjamin's Complaint*

Benjamin's Complaint, submitted herewith at Exhibit 2, addresses an August 11, 2024 accident in Crittenden County, Arkansas. (Compl, ¶¶ 6-9). The Complaint alleges that "[w]hile driving behind Plaintiff, Defendant Zamora fell asleep at the wheel, causing his laden tractor-trailer to accelerate and violently collide with the rear of Plaintiff's vehicle. The force of the collision was such that it abruptly launched Plaintiff's vehicle forward approximately 40 feet." (Compl. ¶ 9). Benjamin alleges that "[a]s a direct and proximate result of the Defendants' negligence, Plaintiff suffered physical injuries throughout Plaintiff's body." (Compl. ¶ 20).

*Benjamin's Initial Disclosures*

Benjamin's May 12, 2025 Initial Disclosures, which are submitted herewith at Exhibit 3, detailed a total of $29,600.00 in allegedly causally-related medical expenses for treatment by the Texas Brain Institute.

*Benjamin's Interrogatory Responses*

Benjamin's June 9, 2025 Responses to Landstar Inway, Inc.'s First Set of Interrogatories, which are submitted herewith at Exhibit 4, detail a total of $115,729.05 in allegedly causally-related medical expenses for treatment by the Texas Brain Institute. They also submit a further $1,182.813.60 in allegedly causally-related future medical expenses for treatment by the Texas Brain Institute.

*Benjamin's Interrogatory Response Supplement*

On November 25, 2025, Benjamin's counsel provided the "supplemental billing records" submitted herewith at Exhibit 5, detailing a total of $114,800 in allegedly causally-related medical expenses for treatment by the Texas Brain Institute, but do not address future medical expenses.

5

*Benjamin's Post-Accident Medical Treatment (the first 24 hours)*

Benajmin was non-emergently transported from the accident scene by Crittenden EMS, LLC.  The EMS records (Benjamin 00001-00006, submitted herewith at Exhibit 6) show that Benjamin had a Glasgow Coma Scale[1] score of 15 – the highest score available.  The EMS records further reflect that Benjamin was ambulatory at the scene, but complained of "Neck pain that started after a MVA."  These records reflect that Benjamin "had no other complaints."

Benjamin was admitted to the Baptist Memorial Hospital – Crittenden Emergency Department on August 11, 2024 at 5:37 AM and discharged to "Home / Self Care" that morning at 7:33 AM.  The full Baptist Memorial Hospital – Crittenden records are submitted herewith at Exhibit 7.  The records reflect that:

> Patient arrives after motor vehicle accident **with complaint of neck pain and right hip pain**. He states he was rear ended while on the freeway by an 18 wheeler truck. **He reports airbags did not deploy and he denies any head trauma or LOC**. he was helped out of the vehicle by emergency personnel and **ambulated on the scene without difficulty**. He was Well until his arrival when he developed neck pain and right hip pain, The pain is worse with movement, **He denies any headaches or vision changes.**

(Emphasis added).  The records further reflect that Benjamin had no neurological or psychological issues, and was "at baseline" and "normal."

Dr. Pruitt with Baptist Memorial Hospital – Crittenden discussed with Benjamin that "All CTs are negative for acute findings. Discussed results with the patient GCS is 15 follows 2 point commands without difficulty. Patient is stable for discharge and will follow up with his PCP as needed."  At that point, Benjamin was discharged less than two hours after being admitted to the Emergency Department.

---

[1]   The Glasgow Coma Scale (GCS) is a neurological assessment tool used to evaluate a person's level of consciousness after a brain injury or other acute medical condition, scoring responses in three areas: Eye Opening, Verbal Response, and Motor Movement, from 3 (worst) to 15 (best).

Per his Interrogatory Responses (EX4), Benjamin "left my home in Magnolia TX, and I was heading to Indianapolis IN, going to see an attorney about my inheritance. I was about halfway there when the accident happened." (Rog Resp. 3). Having been discharged from Baptist Memorial Hospital – Crittenden, Benjamin retrieved his car from the impound lot and continued on his trip.

On August 22, 2024, independent adjustor, Glenn Norwood, with Custard Insurance, took Benjamin's recorded statement with Benjamin's express permission. Benjamin stated that he had left his home in Magnolia, Texas on the way to Indianapolis, Indiana. The full audio-recording of that interview has been produced to Benjamin's counsel and can be made available to the Court. Benjamin described his injuries, stating that he was "frozen up;" and "didn't know if I had whiplash or what was wrong, but my neck and my shoulders were stiff." He added "I was hurting a lot," in my shoulder and neck;" "my whole upper body was real stiff like my neck and my shoulders were just incredible tense." He concluded that "it's been eleven days since the incident, and I'm still real real tight." Benjamin addressed the separate scans of his neck and head at the Baptist Memorial Hospital – Crittenden. Benjamin recalled that he was told that "the MRI results showed to be negative." He acknowledged that he was released that day. Benjamin then related how he retrieved his car from Clark Towing with the assistance of a cousin. Benjamin even explained how he had negotiated a discount on the towing bill. The bill from Clark Towing is submitted herewith at Exhibit 8.

Benjamin related that his car was drivable and that he continued his trip to Indianapolis, Indiana as planned. He then returned to his Magnolia, Texas home "last Sunday, on the 18th" – a week after the accident. Relating the continued travel, Benjamin did not complain of pain, stating rather that he "was absolutely the slowest vehicle on the road."

Asked on August 22, 2024 to describe "what's still hurting on you today," Benjamin responded that "the center of my left back is just killing me." He stated that "my shoulders are extremely stiff and my neck's killing me." He also complained (not mentioned to Crittenden EMS, LLC or Baptist Memorial Hospital – Crittenden) that "I don't know what a migraine headache is, but I have a constant headache that can't go away. I've taken only over-the-counter things like BC powder, and of course this ibuprofen that I was given as a prescription. Nothing even comes close to helping that."

*Benjamin's Pre-Accident Medical Condition*

Prior to the August 11, 2024 accident, Benjamin suffered years of medical complaints, poorly controlled diabetes, repeated falls (with closed head injury) and vision changes, which without more present good cause for independent neuro-psychological testing to test his current Traumatic Brain Injury claims, including (by way of examples only) the following:

- As noted by Memorial Hermann on June 11, 2018 – Sleep Apnea (MH0420); Hypertension (MH0420); Anxiety/Depression (MH0420); and Diabetes (MH0420);

- As noted by Genesis Medical Group on August 13, 2020 – "Pt counseled regarding his A1C of 12.7 … We discussed the potential complications that come with uncontrolled blood sugars as well as my endocrinology referral." (GENESIS095).

- As noted by Genesis Medical Group on November 6, 2020 – Diagnosed with "postconcussion syndrome" and "closed injury of head." "Pt fell yesterday – tripped in his home and sustained a closed fracture of his left 5th metatarsal and various bruises and abrasions to the left side of the face. He went to HCA Tomnall ER where a CT head scan was done and as WNL[2]." (GENESIS081).

---

[2]   "Within Normal Limits"

- As noted by Genesis Medical Group on January 28, 2022 – "Reviewed Problems" include "postconcussion syndrome;" "closed injury of head;" and "chronic depression." "Patient states that he is depressed, hopeless, fatigued and more tired and apathetic recently." (GENESIS048).

- As noted by St. Luke's Health on April 29, 2023 – "a 69-year-old male with a history of depression, diabetes, hyperlipidemia, hypertension who presents to the ED today with complaints of fall with left leg pain. Patient reports he became dizzy lost his balance and fell forward. He is unsure if he hit his head although there is no trauma noted on exam. Patient then reports that he has had theses episodes of dizziness at least 18 of them over the last year where he falls." … He reports his is often not compliant with his diabetes." (SLH0309).

- As noted by Genesis Medical Group on May 17, 2023 – "Mr. Benjamin had a fall on April 29 and was seen at the ER at that time. He was determined to have a bladder infection which I am understanding they must have thought caused him to fall? … The patient has not been checking his sugars at home so he is uncertain what his blood sugar is now. … He seems quite confused and has a difficult time understanding the conversation of different medicines and I think this may have come into play with his high sugars. He is also noncompliant with checking his blood sugars …." (GENESIS021-22).

- As noted by Genesis Medical Group on June 22, 2022 – "pt states he was on his roof fixing things when he fell and now his back in sever (sic) pain. (GENESIS040).

- As noted by Houston Methodist on March 1, 2024 – "Depression (Pt states that he is going through really rough time right now …." (HM0579).

- As noted by Houston Methodist on March 14, 2024 – "Patient states not taking medication consistently because he has been struggling with depression for a while had a give up attitude." (HM0556).

- As noted by Houston Methodist on April 15, 2024 – "2 weeks ago, had vision changes, lasted less than hour when looking at light that was a straight line, it appeared broken …. States years ago had vision issues also, temporary, resolved on its own." (HM0518).

*Benjamin's Post-Accident Traumatic Brain Injury Claim*

Having expressly denied post-accident "head trauma or LOC" to the Baptist Memorial Hospital – Crittenden Emergency Department; and having had years of well-documented pre-existing medical complaints, Benjamin now asserts an allegedly causally-related traumatic brain injury. In support, he has produced a January 24, 2025 Comprehensive Brain Injury Assessment authored by Texas Brain Institute neurosurgeon, Dr. Joseph A. Shehadi, MD, FAANS, FRCSC; and the January 24, 2025 Comprehensive Brain DTI Report of Darren Buono MD, identified as Benjamin's treating physician. The full January 24, 2025 Comprehensive Brain Injury Assessment (the "Brain Injury Assessment") is submitted herewith at Exhibit 9.

While disclosed as a record of medical treatment, the Brain Injury Assessment takes on the character of an expert report. It begins with a section "About Dr. Jospeh A. Shehadi, MD," and narrates that "I have been asked to evaluate this patient and give my medical opinion with a reasonable degree of medical certainty and to the best of my ability using the information available to me." (P. 3).

The Brain Injury Assessment narrates that "The patient's chief complaints are headaches, forgetfulness, difficulty with balance and back pain since being involved in a motor vehicle accident on August 11, 2024. He also suffers from nightmares about the accident." (P. 3).

Addressing a category, labeled "Neurologic," the Brain Injury Assessment advises "Negative for fainting, numbness of arms or legs, seizures, strokes. Positive for headache, problems with memory, tingling of hands, feet, arms or legs, dizziness." (P. 6). Then, the Brain Injury Assessment addresses Benjamin's allegedly causally-related, and new, ailments, under the following headers: HEADACHES (P. 6); Headaches (P. 6); PROBLEMS WITH MEMORY AFTER INJURY (P. 6); PROBLEMS WITH SPEECH, WORDS, READING AND WRITING (P. 7); THOUGHT PROCESSES/ COGNITION (P. 7); ABNORMALITIES OF EMOTION/ PERSONALITY (P. 7); SENSORY PROCESSING PROBLEMS (P. 8); DIZZINESS/ BALANCE PROBLEMS (P. 8), PROBLEMS WITH SLEEP (P. 8); ABNORMAL MOVEMENT (P. 8); BODY DYSFUNCTION (P. 8); SPINAL CORD/ CRANIAL NERVES/ SPINAL NERVES PAIN (P. 8).

While Benjamin had complained about most of these ailments prior to the August 11, 2024 accident, and they are well-documented in his prior medical records, the Brain Injury Assessment includes only the following overwhelmingly-incomplete "Past Medical History":

> Hypertension
> Diabetes
> Dyslipidaemia
> Benign Prostatic Hyperplasia
> Lumbar laminectomy L3-L5 (2013)
> Bilateral shoulder surgery (2008)
> Tonsillectomy

(P. 12).

Ultimately, the Brain Injury Assessment provides the following expert opinion, authored and advanced by Dr. Joseph A. Shehadi:

> I write this opinion with a reasonable degree of medical certainty. In the event additional substantive medical information becomes available to me, I reserve the right to modify my medical opinion accordingly.

In summary, the patient is a 71-year-old right-handed man who was involved in a motor vehicle accident on August 11, 2024.

The patient's signs, symptoms, initial test results, and questionnaires are most consistent with a traumatic brain injury with concussion and post-concussion syndrome. Mr. Guy Benjamin is considered a concussion grade II based on American Academy of Neurology (AAN) and/or Colorado Medical Society guidelines. Well-accepted questionnaires including ImPACT, Rivermead postconcussion questionnaire, and Quality of Life after Brain Trauma are all abnormal and supportive of Traumatic Brain Injury.

…

In particular, the patient suffers from emotional and cognitive problems since the motor vehicle accident on August 11, 2024. He reports abnormal changes in his personality such as being angry, depressed, anxious and nervous. He reports stress intolerance, insomnia and sensitivity to bright lights and sounds and difficulty with memory, speech and dizziness.

Additionally, as a direct result of this motor vehicle accident, the patient suffered musculoskeletal injuries, including pain in the neck and lower back. At the present time, I recommend the following:

I recommend transcranial magnetic stimulation (TMS) which can be quite helpful for these symptoms of depression, anxiety, anger, insomnia, balance problems, and poor stress toleration. For TMS, I recommend the following treatment round frequencies over the course of up to 5 years: 2 in Year 1; 2 in Year 1; 1 in Year 3; 1 in Year 4; 1 in Year 5 (see page 282 of Leung et al, Neuromodulation. 2020 Apr; 23(3):267-290). After each TMS treatment I will reevaluate to assess the patient's progress.

**Regarding timing and causality:**

Because a number of new onset abnormalities affecting cognition, emotional behavior, and neurologic functions as well as musculoskeletal pain are reported with onset immediately after the trauma, a clinical diagnosis of traumatic brain injury is confidently made within a reasonable degree of medical certainty. Therefore, at the present time, I would like to obtain more objective and quantifiable evidence of TBI by getting a state-of-the-art brain MRI DTI (Diffusion Tensor Imaging) and other tests as noted below. These tests will help with diagnoses and guide therapeutic interventions.

Landstar places this opinion before the Court – not to attack it at this preliminary stage – but to address the abundant good cause shown for the timely independent neuro-psychological testing of Benjamin in keeping with the Court's upcoming expert witness deadlines.

*The Proposed Independent Neuro-Psychological Testing*

Benjamin has placed his physical and mental health at direct issue in this lawsuit, including extreme claims of a traumatic brain injury. Landstar has engaged Houston, Texas-based Board Certified Neuropsychologist Adriana Macias Strutt, Ph.D., ABPP-CN to test Benjamin in accordance with Fed. R. Civ. P. 35.

Dr. Strutt has provided a basic outline of her testing process, which has been shared with Benjamin's counsel in the consultation process along with her *curriculum vitae* (See Exhibit 1). The testing process includes approximately 5-6 hours for testing and clinical interview. The testing would be conducted at McNair Campus of Baylor College of Medicine 7200 Cambridge, 9th Floor Houston, TX 77030.

Dr. Strutt's testing process is set forth, as follows:

Procedure: Client will undergo a neuropsychological/psychological evaluation and clinical interview. Client will be required to undergo testing independently. The assessment will examine client's thinking skills, including motivation/engagement, attention/concentration, verbal and visual memory, executive functions (i.e. planning/organizing), language, and visuospatial skills. An understanding of client's functional skills will be obtained. In addition, mood and behavioral tendencies will be examined. A list of measures that may be used is not made available in advance of the examination by Dr. Strutt.

Client will be allowed to take reasonable personal breaks during the testing session in addition to a lunch break, if needed. The measures chosen for the evaluation take approximately 4-5 hours to complete. However, should client engage at a slower than expected pace, additional time may be required. Client is encouraged to bring a water bottle, snacks if deemed necessary, and a light sweater/coat. Should client have a cellular phone, it must be turned off or placed on silent mode and out of sight to limit testing distractions. Client is not allowed to take pictures of the testing materials or to record the testing session. A lunch break will be provided. Glasses/contacts and hearing aids if used by the client are required.

Raw data will only be provided to a neuropsychologist. Testing protocols/raw data will not be provided to attorneys/legal firms to ensure test security and to avoid possible misinterpretation of data. Testing session will not be recorded by examiner. No audio or video recording is permitted to ensure test security.

>Should client need to reach Dr. Strutt's office the day of the appointment, she/he may leave a message on Dr. Strutt's backline 713-798-6527 and the call will be returned as promptly as possible. Please note client will not be on Dr. Strutt's clinical roster/daily schedule, as this is only for her clinic patients and not for legal clients. Thus, if client were to call Baylor to inquire about this appointment, no information for this appointment would be available.

On December 3, 2025, Dr. Strutt advises that she had availability to begin testing on "January 15 and 22 available with a start time of 8:30 am." She added that the dates would soon close.

## CONCLUSION

"The Supreme Court has noted that a plaintiff asserting a physical injury in a negligence action both places that injury in controversy and gives the defendant good cause for an examination." *Stacy v. PPC Transportation Co.*, No. 4:11-CV-4018, 2012 WL 12919230, at *1 (W.D. Ark. Oct. 15, 2012). "Thus, the determination of 'good cause' often merges with the requirements necessary to find that a plaintiff's mental or physical condition is 'in controversy.'" *Id*. Under this standard, Landstar has shown abundant good cause for Benjamin's examination by Dr. Adriana Strutt. The timing, location, and protocol set forth by Dr. Strutt are reasonable and would not be overly burdensome on Benjamin. Finally, Landstar cannot appropriately test Benjain's traumatic brain injury claims without such independent neuro-psychological testing.

**WHEREFORE PREMISES CONSIDERED**, Defendant Landstar Inway, Inc. respectfully seeks an Order of this Court, for good cause shown, for the independent neuro-psychological testing of Plaintiff Guy Benjamin as set forth above, with said testing to be conducted on January 15, 2025, January 22, 2025, or such other dates Dr. Strutt has available at the time of the Court's determination of this issue.

Respectfully submitted,

s/ J. Lewis Wardlaw
J. Lewis Wardlaw (Arkansas Bar No. 2004034)
MARTIN, TATE, MORROW & MARSTON, P.C.
6410 Poplar Ave., Tower II, Suite 900
Memphis, TN 38119-4839
(901) 522-9000
(901) 527-3746 (Fax)
lwardlaw@martintate.com

*Attorneys for Defendants Luis Zamora and Landstar Inway, Inc.*

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that a copy of the foregoing FRCP 35 Motion and all exhibits thereto have been served upon the following counsel for the Plaintiff, via the Court's electronic filing system on this the 13th day of December, 2025.

Robert Morse, Esq.
Lee D. Curry, Esq.
DASPIT LAW FIRM
124 W. Capitol Ave., Suite 1820
Little Rock, AR 72201
robert@daspitlaw.com
lcurry@daspitlaw.com

*Attorneys for Plaintiff*

s/ J. Lewis Wardlaw
J. Lewis Wardlaw